**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 22-71-DLB**

**ALFRED WERMAN**                                                             **PLAINTIFF**

**v.**                 **<u>MEMORANDUM OPINION AND ORDER</u>**

**H. JOYNER, ET AL.**                                           **DEFENDANTS**

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Alfred Werman is an inmate confined at the federal penitentiary in Adelanto, California. Werman has filed a *pro se* civil rights complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). (Doc. # 1).[1] Following service of process, the Defendants filed a Motion to Dismiss the complaint. (Doc. # 44). Werman filed a Response to the motion and has requested that the Court recruit counsel to represent him in this case. (Docs. # 46, 47). Both motions are now fully briefed. (Docs. # 48-50). Because Werman failed to exhaust his administrative remedies fully and properly with respect to his claims, and most (but not all) of the claims may not be pursued in a *Bivens* action, the Court will grant the Defendants' motion.

---

[1] In his complaint, Werman states that he filed a tort claim regarding his allegations. (*See* Doc. # 1 at 5). He also included documents indicating that he had unsuccessfully attempted informal settlement of his claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. (*See id*. at 6-13). However, upon screening the Court advised Werman that his complaint did not actually set forth a FTCA claim or sue a proper defendant, and indicated that he could file an amended complaint to include a viable claim under the FTCA if he wished to do so. (Doc. # 11 at 1-2). Werman did not file an amended complaint, so no FTCA claim is pending in this case.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Werman's complaint details events occurring when he was confined at the federal prison in Inez, Kentucky.  (Doc. # 1 at 1).  Werman alleges that in late June 2021, Bureau of Prisons ("BOP") officer Salthiel Hurley repeatedly engaged in verbal sexual harassment.  A few weeks later, Werman filed a complaint against Hurley under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601.  Werman alleges that after the PREA complaint was filed, prison psychologist Dr. Mollie LeFever was not helpful, and instead became "verbally abusive" and refused his request to be transferred to another prison.  (Doc. # 1 at 2).

Werman indicates that by early July 2021, he began having suicidal thoughts.  When he told this to prison staff, he was placed in a holding cell where he was kept under watch by officers.  At this time Werman was stripped, clothed in paper garments, and put in full restraints.  Werman alleges that during this process BOP officer Terry Melvin was verbally abusive.  He also states that initially he was not visited by anyone from the psychology department.  Werman alleges that when Dr. LeFever spoke with him about his mental health concerns, she did so in front of staff and other inmates and only in an effort to convince him that he was not suicidal rather than to provide treatment.  Werman states that for the next seven hours he was left in the holding cell in full restraints, although a supervisor checked his restraints every two hours.  He states that officers Zachary Thompson and Joseph Turner left the lights on and refused to give him a mattress or any food.  Thompson, Turner, and officer Joseph Holcomb also refused to loosen his restraints after he complained that they were too tight.  (Doc. # 1 at 3; Doc. # 1-1 at 3-4, 6).

Werman alleges that in the days following, he showed bruises and welts from the restraints to nurses Shellia Daniel, Lonna Plumley, and David Spradlin. He also told them that he had experienced bloody stools, but that none of them took his symptoms seriously or ensured that he was examined by a doctor. (Doc. # 1-1 at 5, 7).

Beginning in mid-July 2021, Werman filed a series of three overlapping and disjointed inmate grievances and appeals regarding these events. (*See* Doc. # 1-1 at 14-28). However, the BOP rejected nearly all of them for various procedural deficiencies, and Werman abandoned those that were not. (*See* Doc. # 44-2 at 2-4).

In the first, on July 16, 2021, Werman sent a "sensitive" grievance to the Mid-Atlantic Regional Office ("MARO") setting forth his allegations. (Doc. # 1-1 at 21).[2] MARO received this grievance on July 22, 2021, and assigned it Remedy ID # 1090162. MARO rejected the grievance on August 9, 2021, and advised Werman that he should have filed a regular grievance with THE warden instead. (Doc. # 44-2 at 2 ¶5, 11, 23).

On August 25, 2021, Werman sent an appeal to Central Office, alleging that he had not received any response to his sensitive grievance to MARO within thirty days. (Doc. # 1-1 at 20).[3] The Central Office received the appeal on September 7, 2021, and rejected it the same day for the same reason identified by MARO. (Doc. # 44-2 at 2 ¶6, 13).

---

[2]   BOP regulations required Werman to "clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution." 28 C.F.R. § 542.14(d). Werman did not mark his grievance request as sensitive, although MARO's rejection notice indicates that its rejection was based upon its conclusion that the grievance did not warrant sensitive handling.

[3]   Werman filed his appeal to the Central Office too soon even if this had been true. *See* 28 C.F.R. § 542.18; *Shah v. Quintana*, No. 17-5053, 2017 WL 7000265, at *1 (6th Cir. July 17, 2017). MARO had, in fact, timely responded, rendering Werman's appeal premature.

Six weeks later, on October 21, 2021, Werman filed another appeal to MARO, expressly referencing the same Remedy ID # 1090162.  However, this was not a new attempt to file a sensitive grievance.  Instead, Werman stated that on September 1, 2021, he had given a grievance to a staff member to be filed with the warden regarding his allegations.  Werman claimed entitlement to appeal because more than thirty days had passed without response from the warden.  Werman further noted that this appeal to MARO was delayed because on September 28, 2021, he had been transferred to the federal prison in Pine Knot, Kentucky, and alleged that for three weeks prison staff there refused to give him a BP-10 form to appeal.  (Doc. # 1-1 at 17).

The parties do not point out what readily appears from the record: Werman referenced the wrong Remedy ID # in this appeal to MARO.  Werman's error caused MARO to justifiably reject his appeal, which caused Werman to abandon his "third" grievance series.  To wit: on August 30, 2021, Werman signed a new BP-9 grievance with the warden, stating in it that four days earlier he had received a rejection from MARO (from Remedy ID # 1090162) which directed him to file a grievance initially at the institutional level.  (Doc. # 1-1 at 19).  As noted above, one day later Werman handed his new grievance to a staff member for filing with the warden.  (Doc. # 1-1 at 17).  The warden received this grievance on September 8, 2021, and assigned it a new number: Remedy ID # 1093694.  (Doc. # 1-1 at 19; Doc. # 44-2 at 4 ¶¶11, 13).  Werman was transferred to a different prison twenty days later, apparently not having received formal notification of this new Remedy ID number.  Warden H. Joyner— the warden of the prison where Werman was confined before his transfer—denied the grievance on October 1, 2021, three days after Werman had been transferred out.  (Doc. # 1-1 at 18).  The

warden's denial would then have been forwarded to Werman at his new place of confinement. Apparently before he received the warden's denial, Werman filed his appeal to MARO on October 21, 2021. Werman referenced the earlier Remedy ID # 1090162 instead of the new Remedy ID # 1093694 that had recently been assigned and asserted incorrectly that the warden had not responded to his grievance. (Doc. # 1-1 at 18).

Thus, when MARO received Werman's appeal on October 29, 2021, it correctly treated it as part of the old Remedy ID #1090162 because that is the one Werman expressly referenced in his BP-10 grievance appeal. (*See* Doc. # 1-1 at 17). On November 12, 2021, MARO rejected the appeal, noting that Werman had not included a copy of his grievance to the warden or the warden's response to it. (Doc. # 1-1 at 16; Doc. # 44-2 at 2-3 ¶7, 14).[4] Werman did not attempt to resubmit his appeal to MARO with a copy of the warden's denial, which by that time he certainly should have received. Instead, on December 5, 2021, Werman appealed to the Central Office, stating that he had not sent MARO a copy of the warden's response to his BP-9 because he did not receive a timely response from the warden. (Doc. # 1-1 at 15). The Central Office rejected Werman's appeal on January 14, 2022, stating that it concurred with MARO's rationale for rejecting that appeal, and directing Werman to follow the directions provided

---

[4]  Although it does not affect the disposition of Werman's claims, the Court notes that portions of the Eads Declaration do not merely relate facts within the declarant's knowledge, but indulge in argument and characterization unwarranted by the facts. The Declaration asserts that:

(1) MARO rejected Werman's appeal because he "had still failed to start the remedy process at the institutional level"; (2) Werman "was advised to provide copies of institutional level appeals with future appeals"; and (3) "the rejection notice provid[ed] directions on how to correct the problem by submitting a request at the institutional level." (Doc. # 44-2 at 2-3 ¶7). But MARO's rejection notice referenced by Eads in support of these claims, (Doc. # 1-1 at 16), says none of these things. Instead, it states only that Werman had failed to include a copy of either the grievance or the warden's response to it. *See Id.*

5

by MARO. (Doc. # 1-1 at 14). Werman took no further steps to advance or cure defects in this remedy series. (Doc. # 44-2 at 3 ¶7).

Adding to this confusion was Werman's decision to file yet another grievance, this time complaining about these events as well as other, distinct concerns. On August 5, 2021, with one grievance on these matters still pending, Werman filed another inmate grievance with the warden which was assigned Remedy ID # 1091274. In this grievance Werman included his complaints about his placement in restraints and subsequent medical care. But he also complained that he had requested medical care in June but had never been examined by a nurse, that his eyeglasses were broken, and that his prescription was outdated. (Doc. # 1-1 at 27). The warden rejected this grievance on August 17, 2021, because it related to several unrelated matters. *See* 28 C.F.R. § 542.14(c)(2) ("If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue."). The warden directed Werman to file a separate inmate grievance for each issue. (Doc. # 1-1 at 26; Doc. # 44-2 at 3 ¶8, 12).

Werman ignored these directions and appealed all of his various issues and concerns to MARO on August 25, 2021. (Doc. # 1-1 at 25). MARO rejected the appeal on September 10, 2021, noting that Werman did not include a copy of his institutional grievance or the warden's response to it. MARO advised Werman that he could correct this defect and resubmit his appeal within ten days. (Doc. # 1-1 at 24; Doc. # 44-2 at 3 ¶9, 12). Werman sent an appeal to the Central Office on September 21, 2021, again setting out multiple unrelated issues and claiming that MARO lied about his failure to

6

include copies of the proceedings before the warden.  (Doc. # 1-1 at 23).  The Central Office rejected Werman's appeal on multiple grounds on October 25, 2021, and directed him to start each individual grievance at the institutional level.  (Doc. # 1-1 at 22; Doc. # 44-2 at 3-4 ¶10, 14).  Werman again disregarded these directions.

In his Complaint, Werman contends that the defendants' actions violated his rights under the Eighth Amendment to the United States Constitution and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6, and asserts claims for assault, negligence, and malpractice.  He seeks damages.  (Doc. # 1 at 4, 8).

## II.   ANALYSIS

### A.   Motion to Appoint Counsel

Simultaneously with the filing of his response, Werman filed a motion requesting that the Court appoint an attorney to represent him in this proceeding, arguing that it isn't fair that the defendants are represented by government counsel while he does not have similar assistance.  (Doc. # 46).  The Court has discretion to recruit counsel to represent a party in civil litigation, *Richmond v. Settles*, 450 F. App'x 448, 452 (6th Cir. 2011), but it is an authority reserved for the exceptional case, *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993).  When deciding whether such circumstances are present in a given proceeding, the Court considers:

    a.    the plaintiff's financial resources;
    b.    the plaintiff's efforts to obtain counsel;
    c.    the type of case;
    d.    the complexity of the case, both factually and legally;
    e.    the ability of the plaintiff to represent himself; and
    f.    the likelihood the plaintiff may prevail on his claims.

*See Cleary v. Mukaskey*, 307 F. App'x 963, 965 (6th Cir. 2009).  The appointment of counsel is not appropriate when the "*pro se* litigant's claims are frivolous or when the

chances of success are extremely slim." *Mars v. Hanberry*, 752 F. 2d 254, 256 (6th Cir. 1985) (citations omitted). The facts and claims, particularly those at issue in the defendants' dispositive motion, are not complex factually or legally. And as explained below, procedural and other barriers prevent the Court from reaching the merits of Werman's claims. The Court has evaluated the pertinent factors and concludes that the recruitment and appointment of counsel is not warranted in this case.

### B. Failure to Exhaust

The defendants move to dismiss Werman's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. They contend that Werman failed to properly exhaust his administrative remedies, (Doc. # 44-1 at 5-11); the Court should not infer a remedy under *Bivens* for the plaintiff's claims in light of the Supreme Court's decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), (Doc. # 44-1 at 11-22); and that there is no private right of action to enforce HIPAA, (Doc. # 44-1 at 22-23). The Court addresses each argument in turn.

The defendants' challenge to the viability of Werman's HIPAA claim and to the cognizability of his *Bivens* claims are governed by the standards applicable to a motion to dismiss. *See Laster v. CareConnect Health Inc.*, 852 F. App'x 476, 477 (11th Cir. 2021) (affirming district court's dismissal pursuant to Rule 12(b)(6) of private citizen's claim under HIPAA for lack of standing); *Turkmen v. Hasty*, 789 F.3d 218, 264 (2d Cir. 2015) (affirming district court's grant of Rule 12(b)(6) motion to dismiss *Bivens* claim on cognizability grounds), *judgment rev'd in part, vacated in part sub nom; Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

That standard does not apply to the defendants' assertion that Werman failed to exhaust his administrative remedies. After all, exhaustion is an affirmative defense, not an element of the plaintiff's claim. *Jones v. Bock*, 549 U.S. 199, 211–12 (2007). A motion to dismiss is therefore not a viable means to challenge exhaustion unless the insufficiency is plain from the complaint itself. *Fletcher v. Myers*, No. 5:11-141-KKC (E.D. Ky. May 17, 2012), *aff'd*, No. 12-5630 (6th Cir. Jan. 4, 2013) ("Because Fletcher's failure to exhaust, or to attempt to exhaust, administrative remedies is apparent from the face of his complaint, the district court properly dismissed Fletcher's complaint on that basis."). Defendants make no such claim. Instead, they attach and rely upon a declaration extrinsic to the pleadings in support of their motion. (*See* Doc. # 44-2). The Court therefore treats their motion as one seeking summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). The defendants have the burden of establishing their affirmative defense that Werman did not exhaust administrative remedies. *Cf. Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Werman proceeds without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437–38 (6th Cir. 2012).

In comparison, a party seeking summary judgment under Rule 56 must establish that even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). To defeat such a motion, the nonmoving party must make an affirmative showing with proper and admissible evidence. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). Even if proceeding *pro se*, the nonmovant cannot rely on unsworn allegations or denials to oppose a dispositive motion; a party's "status as a *pro se* litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

The defendants are correct that Werman failed to fully and properly exhaust his administrative remedies with respect to his claims. Federal law requires an inmate to exhaust any available administrative remedies before filing suit regarding the conditions of his confinement. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The BOP's Administrative Remedy Program requires a prisoner complaining about the conditions of his confinement to first file an informal grievance, as well as a formal grievance with the warden. 28 C.F.R. §§ 542.13(a), 542.14(a). If unsatisfied with the response, the inmate must appeal to the appropriate regional office, and if necessary, to the Central Office. 28 C.F.R. § 542.15(a). At any level of the process, the grievance coordinator may reject a grievance or appeal if it fails to comply with applicable requirements. 28 C.F.R. § 542.17(a). If the defect can be corrected, the coordinator will advise the inmate of the defect and afford him a reasonable

10

time to remedy the error and resubmit the grievance. 28 C.F.R. § 542.17(b). If no such opportunity is afforded, the prisoner may appeal the rejection. If the inmate chooses to appeal a rejection, the coordinator at the appellate level may affirm the rejection, disregard the rejection and accept the submission for filing at the appellate level, directly return the submission to the lower level at which it was rejected, or direct that the submission be accepted at the lower level once the inmate resubmits it there. *See* 28 C.F.R. § 542.17(c).

Here, the BOP justifiably rejected Remedy ID # 1090162 when it concluded that Werman should have filed it with the warden rather than as a "sensitive" grievance. *See* 28 C.F.R. § 542.14(d). Werman effectively abandoned Remedy ID # 1093694 when he filed his appeal to MARO referencing Remedy ID # 1090162 instead of the correct Remedy ID number. The BOP properly rejected Werman's further efforts to proceed under Remedy ID # 1090162 for the reasons stated above. Werman also improperly sought to combine multiple issues in a single grievance in Remedy ID # 1091274. *See* 28 C.F.R. § 542.14(c)(2). And Werman ignored repeated prompts from the warden, MARO, and the Central Office to rectify these and other deficiencies.

It is well established that administrative remedies must be exhausted properly, meaning the prisoner must follow this process in full "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This is because administrative review both provides the agency with an opportunity to correct its own mistakes without judicial intervention and creates an evidentiary record essential to meaningful judicial review if it does not. Unless "proper exhaustion" is required,

11

> a significant number of aggrieved parties, if given the choice, would not voluntarily exhaust. ... Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Id.* at 89–90 (cleaned up). Here, more than once Werman abandoned the grievance process instead of taking advantage of repeated opportunities to cure the defects which lead to the rejection of his appeals. He therefore failed to exhaust his administrative remedies. *Cf. Napier v. Laurel Cnty.*, 636 F.3d 218, 223-24 (6th Cir. 2011); *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance."). For this reason alone, his complaint is subject to dismissal without prejudice.

### C. *Bivens* Claim

Werman's complaint alleges sexual harassment by one guard; verbal abuse by two guards and a psychologist; excessive force applied through his restraints; inhospitable conditions of confinement while on suicide watch; and insufficient psychological and medical care. The defendants contend that none of these claims are cognizable in a *Bivens* action. (Doc. # 44-1 at 11-22).

The United States Supreme Court has recognized an implied damages remedy for constitutional violations by federal officials in only three scenarios: (1) violation of the Fourth Amendment arising from the search of his private residence without probable cause, *see Bivens*, 403 U.S. at 397; (2) violation of the Fifth Amendment arising from sex-

based discrimination in federal employment, *see Davis v. Passman*, 442 U.S. 228, 249 (1979); or (3) violation of the Eighth Amendment arising from deliberate indifference to a prisoner's medical care, *see Carlson v. Green*, 446 U.S. 14, 24 (1980). Since then, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001). And it has recently held in *Ziglar* and *Egbert* that *Bivens* should very rarely be extended to contexts that differ meaningfully from those three discrete circumstances where it has previously been recognized. *See Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) ("What started out as a presumption in favor of implied rights of action has become a firm presumption against them.").

The Court must answer two questions to assess whether Werman's claims are cognizable under *Bivens*. First, it must decide if his claims arise in a "new context" because they are "different in a meaningful way" from previous *Bivens* claims permitted by the Supreme Court. The Court considers whether they involve different constitutional rights, a different category of defendants, implicate different policy considerations, or present differing risks of judicial intrusion. *Ziglar*, 137 S. Ct. at 1859–60. Second, if the claims do arise in a new context, the Court next determines whether "special factors" counsel hesitation before extending the *Bivens* remedy to this new context. *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019).

The Court does not write upon a clean slate when answering these questions; ample precedent establishes that most of Werman's claims cannot be asserted under *Bivens*. *See Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) (holding *Bivens* unavailable to assert Eighth Amendment claim for verbal

13

harassment); *Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (same for Eighth Amendment claims of excessive force, sexual harassment, and sexual assault). These claims will therefore be dismissed for failure to state a claim.

The same cannot be said for Werman's claim of deliberate indifference to his serious medical needs. The Supreme Court recognized a *Bivens* remedy for such claims more than forty years ago in *Carlson*. It is true that the Supreme Court has stated that it is "possible" that *Bivens* and its progeny would not have been decided the same way if presented today. *Ziglar*, 137 S. Ct. at 1856. But the Supreme Court has also repeatedly rejected invitations to "dispense with *Bivens* altogether" within its currently-accepted confines. *Egbert*, 142 S. Ct. at 1803. The Court therefore flatly rejects as unsound the argument made by the defendants, and accepted by some courts, that particular differences in the medical issue involved or the care given means that the underlying claim itself presents a "new context." The Supreme Court's guidance makes plain that these are distinctions without a difference: the provision of medical care in this case does not involve a "different category of defendants" than those in *Carlson*, and the defendants identify no "special factors that [*Carlson*] did not consider." *See Id*. at 1803–04. In sum, distinctions that are not "meaningful" as described by the Supreme Court do not warrant a conclusion that a case presents a "new context" merely because the BOP wishes to accomplish a broader abrogation of *Bivens* in the very circumstances where the Supreme Court has refused to do so.

A recitation of the allegations at issue in *Carlson* is instructive. Carlson alleged that prison administrators knew that both the medical facilities and staff at the prison were

14

grossly inadequate, but nonetheless refused to transfer him to another prison notwithstanding advice from his physicians.  Further, when he suffered an asthma attack, health care staff failed to provide competent medical care for eight hours, and when they did administer medication, they gave him drugs which were contra-indicated, making his asthma attack even more severe. Staff also attempted to use a respirator they knew to be inoperative, and delayed unreasonably before taking him to an outside hospital. *Carlson*, 446 U.S. at 16 n.1.

The foregoing plainly refutes the defendants' assertion that *Carlson* was limited to emergency medical treatment.  While some cases have read *Carlson* in that manner, *cf. Washington v. Bureau of Prisons*, Civil No. 16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022), the Court respectfully disagrees.  Recent decisions by the Sixth Circuit suggest that *Carlson* retains vitality, permitting an implied damages action, notwithstanding the presence of insignificant factual differences with that case.  *Cf. Morel v. Dept. of Justice*, No. 7:22-CV-15-DCR, 2022 WL 41250705 (E.D. Ky. Sept. 9, 2022), *aff'd*, No. 22-5718 (6th Cir. Aug. 23, 2023).  Because Werman's claims regarding his medical care do not present a new context, engaging in the special factors analysis is unnecessary.

The Court thus concludes that *Ziglar* and *Egbert* preclude Werman from asserting *Bivens* claims regarding alleged verbal abuse, sexual harassment, excessive force, and conditions of confinement, but do not do so with respect to his claims regarding his medical care.  Nonetheless, as noted above Werman did not properly exhaust his administrative remedies with respect to any of these claims.  The Court will therefore dismiss Werman's constitutional claims without prejudice.

### D.     HIPPA Claim

The defendants finally contend that there is no private right of action to enforce HIPAA.  (Doc. # 44-1 at 22-23).  This is plainly correct, as HIPAA expressly confers the authority to enforce its provisions upon the Secretary of the Department of Health and Human Services.  *See* 42 U.S.C. § 1320d-5.  Accordingly, "every circuit to have considered the issue has also held that no private right of action exists under HIPAA." *Laster*, 852 F. App'x at 478 (*citing, inter alia, Faber v. Ciox Health, LLC*, 944 F.3d 593, 596 (6th Cir. 2019) ("HIPAA doesn't authorize a private cause of action.")). Werman's claim under HIPAA will therefore be dismissed for lack of standing.

### E.     Lack of Supplemental Jurisdiction

The defendants make no effort at all to address Werman's claims for sexual harassment, assault, negligence, and malpractice, which he asserts independently of his claims under the Eighth Amendment.  (*See* Doc. # 1 at 4).  They do not argue, as they could, that the Westfall Act, 28 U.S.C. § 2679(b)(1), immunizes federal employees from tort liability for actions taken within the scope of their employment.  *Roberts v. United States*, 191 F. App'x 338 (6th Cir. 2006).

Regardless, the Court will dismiss these claims under Kentucky law without prejudice.  A district court may "decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction ..."  28 U.S.C. § 1367(c)(3).  Where, as here, the Court has dismissed all of the plaintiff's federal claims early in the proceedings, the Court concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. *See Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021), *cert. denied*, 143 S. Ct. 88

(2022); *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) (noting that "[a]fter a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims.").

### III. CONCLUSION

For each of these reasons, the Court will dismiss Werman's complaint without prejudice as set forth below. Accordingly,

**IT IS ORDERED** as follows:

1. Plaintiff Alfred Werman's motion to appoint counsel (Doc. # 46) is **DENIED**.

2. Defendants' Second Corrected Motion to Dismiss (Doc. # 44) is **GRANTED**.

3. The federal claims in plaintiff Alfred Werman's Complaint (Doc. # 1) are **DISMISSED without prejudice** for failure to exhaust administrative remedies.

4. The Court declines to exercise supplemental jurisdiction over any claims asserted under Kentucky law in Werman's Complaint (Doc. # 1). Such claims are **DISMISSED without prejudice**.

5. This matter is **STRICKEN** from the docket.

This 28th day of August, 2023.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\PikeCivil\2022\Werman 22-71-DLB Memorandum PSO.docx